(Decided 7th March, 1877.)

DAVID WILSON and EBEN B. HUNTING, trading as WILSON & HUNTING *vs.* ELIZABETH C. JONES and GEORGE F. JONES, Trustee.

*Non-Liability of the Separate Estate of a Married Woman for debts not contracted with direct reference to that Estate.*

In order to charge the debts contracted by a married woman upon her separate estate as a lien in equity, it is necessary that it should affirmatively appear, that her contract was made with direct reference to her separate estate, and that it was her intention to charge the same.

A bill was filed against a *féme covert* and her trustee for the purpose of charging her separate estate with a lien for materials furnished by the complainants for the improvement of the same; the bill did not aver that there was any contract by her to bind her separate estate, or any intention on her part to create a charge or specific lien thereon for the payment of the complainant's claim. On demurrer to the bill, it was HELD:

That the bill stated no case entitling the complainants to relief in equity, and that the demurrer should be sustained.

APPEAL from the Circuit Court of Baltimore City.

The case is stated in the opinion of the Court.

The cause was argued before BARTOL, C. J., GRASON, MILLER, ALVEY and ROBINSON, J.

*Luther M. Reynolds* and *Orville Horwitz*, for the appellants.

And the question before the Court now is, will equity in this State enforce, as against a house and lot, belonging to the separate estate of a married woman, over which she has the power of a *féme sole*, the payment of a debt contracted by her, in parol, for the materials she used in building the house, where the house greatly enhanced the value and amount of her separate estate?

This Court has never had an occasion to pass upon such a case, in all respects. In cases however, involving the same doctrine, this Court has said as in *Norris vs. Lantz*, 18 *Md.*, 269, "except *in regard* to the separate property of a *féme covert*, all her contracts are null." In *Koontz vs. Nabb*, 16 *Md.*, 555, "A married woman may act *in reference* to her separate estate as a *féme sole*, when the settlement contains no limitations."

On the subject of intent of the wife to charge her separate estate, in *Yale vs. Dederer*, 22 *N. Y. R.*, 450, the Court say, "the intention must appear in the contract, or the *consideration* of the contract must be for the benefit of the estate itself." At page 460, "If contracted for the benefit of the estate, it would, *of course, become a charge;* upon the well founded presumption the parties so intended in analogy to the doctrine of equitable liens for purchase money." In *Stinson vs. Prescott*, 15 *Gray*, 325, the Courts of Massachusetts have adopted the law of that case.

In *Owen vs. Cawley*, 42 *Barbour*, 105, the husband acting for the wife, by parol, employed counsel to sue for and collect claims due her in her business. Page 118, the Court say, "this separate estate is liable to pay the attorney's fees, though they failed to realize any of the claims she gave them to collect."

In *Oswald vs. Moore*, 19 *Ark.*, 257; the wife employed counsel to prosecute a divorce against her husband. The

Court decided her counsel fees were a charge upon her separate estate.   In *Batchelder vs. Sargant*, 47 *N. H.*, 262, the contract was for cattle to supply a farm the wife was cultivating.

The Court say, page 265, in respect to implied promises of the wife, and promises not in writing, the modern cases hold there can be no solid ground for distinction between such cases and promises in writing, and that Courts will decree payment in both class of cases alike.   See *Conn vs. Conn*, 1 *Md. Ch. Dec.*, 218, where the Chancellor says, this contract can be shown by parol.

In *Greenough vs. Wiggenton and Wife*, 2 *Iowa*, 435, Greenough contracted in parol with husband and wife to erect a house on her lot in Burlington.   Wiggenton and wife demurred, and on appeal the Court say, (page 438,) "It would be rank injustice for the wife to enter into such engagements as secure valuable improvements on her separate estate, and then by demurrer exempt it from liability for these improvements."

On the subject of the husband uniting with the wife in the contract, *Mayer vs. Symmes*, 19 *Ind.*, 119, the statute requiring the co-operation of the husband to encumber or convey the wife's property is like that of Maryland, except it says the wife cannot encumber her property without her husband.

In that case, the wife by parol, employed counsel to recover by suit, her share of her father's estate.   Afterwards counsel filed a bill against her separate estate for fees for services rendered in that suit.   It was contended on demurrer to the bill, that her separate estate could not become liable expressly or by implication for the payment of these fees, but the Court on appeal, held, pages 119 and 120, "that the statute forbidding the encumbrancing, &c., &c., of the wife's property without the concurrence of the husband, had relation to such acts of conveyance, encumbrance, &c., &c., as previously required the signa-

ture of the husband; and that a married woman had the right on general principles to bind her separate estate for the payment of debts contracted for the benefit of the estate." "We do not think," said the Court, "it was the intention of the Act to abrogate any right or power she had in reference to her property at the time of its passage."

See 5 *C. E. Greene*, 119. There a married woman could not convey or encumber her property without her husband, and yet her separate mortgage was held to constitute a charge.

In *Gardner vs. Gardner*, 7 *Paige*, 112, the husband loaned the wife $2000, and took her bond for the payment of the money. After his death she administered, and then told the Orphans' Court she used this money in the purchase of lots for her separate estate, and in improving the same. The Court, (page 116,) say her estate is chargeable in equity for any debt she may contract for the use of her separate estate, and if she borrowed the money, and applied it to the use of her separate estate, the estate is liable. *Vide the same case on appeal*, 22 *Wend.*, 527.

In *Wells vs. Thorman*, 37 *Conn.*, 318, the wife made a parol contract with Wells to put a new front in her store and fix it up. The bill not being paid, Wells filed his bill, and the Court say, (page 319,) "she made the contract for this work through her husband, and the work was performed for the benefit of her separate estate, and it had that effect. We deem these facts sufficient in equity to charge her separate estate."

Nor is this class of cases affected by our married woman's Act. The Act says she shall hold the property for her separate use, with the power of devising the same as though she were a *féme sole* or she may *convey* the same by joint *deed* with her husband. All this law did, was to authorize her to acquire property for her separate use, *without the intervention of a trustee*, and to devise it with-

out the consent of her husband. The restriction in reference to the conveyance of her property, the Act left her as it found her. Her husband since the Act performs the office of her trustee before. It took no power from her, nor did it confer any new power upon her in that respect.

To say she cannot *convey* her property, except by joint deed with her husband, does not even suggest the notion, she cannot do any act at all, concerning her property, without his concurrence. It is a mistake to suppose the modification, restriction, or even the taking away of a larger power, *i. e.*, that of conveying property, affects in any way the right to exercise lesser powers.

Let it be supposed then, that before the Act, a married woman had the power to charge her separate property, and also the power to convey it, would the Act restraining her in the power to convey, affect in any degree her power to charge?

In the case on trial, however, we do not look to the Act for the power of Mrs. Jones to charge or convey her property—we look to the bill. By the bill she not only held her property for her separate estate with the power of devising it as a *féme sole,* but she held it with *all* of the *rights and powers* in reference to it of a *féme sole.*

The law of all the cases above mentioned, applies to married women holding property as their separate estate only. Mrs. Jones held her property, not only as her separate property, but she possessed a power over it, which none of the women named in those cases had over their property. Her ownership was coupled with the dominion and power of an unmarried woman.

If then it be true, she held it with all of the rights and powers that a single woman could have held it, for what rights or powers, or the exercise thereof, could she have been indebted to her husband.

Whatever may then be the *disabilities* of Mrs. Jones touching her separate estate generally, it will not be denied

that in reference to her separate property involved in the suit, she was clothed with all the *abilities* of a *féme sole*. If it be asked what means the language "with all the rights and powers of a *féme sole;*" it is answered by asking what means the language of the Act "with the power of devising the same as though she were a *féme sole.*" Just as any other married lady has, by the Act, the simple and single power of devising her separate property as a *féme sole,* so has Mrs. Jones, by her deeds, all the powers of a *féme sole* in reference to her separate property.

*Jesse N. Bowen* and *Wm. Shepard Bryan,* for the appellees.

In *Koontz vs. Nabb,* 16 *Md.,* 549, it was decided, "that a married woman having a separate estate cannot affect that separate estate, unless the obligation sought to be enforced, presents upon its face some evidence of the intent to charge the estate, or there be evidence *aliunde* tending to prove such intent;" page 554. In this case no such intent is alleged, or even intimated, and therefore the separate estate is not affected.

The debts charged upon separate estates of married women, have been declared by this Court as equitable liens, (*Hall vs. Eccleston,* 37 *Md.,* 521,) to be enforced "as being somewhat in the nature of equitable mortgages." And the power to impose these charges is deduced from the power of disposition; and hence it is declared in the same case, (*page* 520,) that the wife may, acting *jointly with her husband,* charge her separate estate; and it is further said that there was no restriction on the wife's power to charge, "*provided it be done with the concurrence of her husband.*" In the case at bar, there was no concurrence of the husband in the alleged contract.

The fourth section of the Statute of Frauds, requires all contracts to be in writing which affect lands, or any interest in them. As the supposed contract averred in this case

would, if established, create an equitable lien on land, it ought to have been in writing.

No doubt the rule in Maryland on the subject of charging separate estates for debts is different from that which prevails in England, and in the other States of the Union. This Court, in *Koontz vs. Nabb*, expressly rejected the rule which has been growing up in England since 1776, and which has been adopted with more or less variation in many of the States.    In England there has been a general tendency toward regarding a married woman, in all respects, as a *féme sole*, in reference to her separate estate ; and under the silent influence of this principle many decisions have been made, which are incompatible with the legislation and decisions of Maryland.  A number of these cases are referred to in 2 *Story's Equity Jurisprudence*, (*new edition*,) secs. 1401, *et seq.*, and in notes.

The charges in the bill of complaint are vaguely set forth.  If materials purchased from the appellants were used in the building of houses, there was nothing to prevent them from filing a mechanics' lien ; but his failure to adopt the remedy given by the law, cannot change the nature of the transaction, or enable him to invent a remedy for himself.

BARTOL, C. J., delivered the opinion of the Court.

This bill of complaint was filed by the appellants for the purpose of charging the separate estate of the appellee Elizabeth, who is a married woman, with the payment of a debt alleged to be due from her to the appellants. The appellees demurred to the bill, and this appeal is from the decree of the Circuit Court sustaining the demurrer and dismissing the bill.

The bill of complaint alleges that Elizabeth C. Jones, a married woman, was during the years 1872, 1873 and 1874, seized or possessed in her own right, or through the intervention of her trustee, George F. Jones, of several

lots of ground in Baltimore City, and being so seized and possessed of said ground, as and for her sole and separate estate with all the rights, and powers in reference to the same, of a *féme sole*, erected and built thereon, during those years, a large number of houses adapted to the uses of stores, dwellings and the like, and that she did thereby greatly enhance the value and amount of her said separate estate.

That the said Elizabeth with the view of so improving her said separate estate, in order to enable her to erect her said houses, or many of them, during those years pur-chased of the complainants lumber and other materials, which she used in said houses or many of them, which lumber and other materials with the prices for which the same were sold, are set forth in a bill of particulars filed and exhibited as a part of the bill of complaint. It is further alleged that after building several of the houses, the said Elizabeth has sold the same to other persons.who now own and hold them; but that she still holds and owns twenty, if not more of the houses and lots of ground appurtenant thereto that are described or referred to in a certain paper writing exhibited with the bill of complaint.

It is further alleged that the said Elizabeth is now indebted to the complainants in the sum or balance of $2182.06 together with interest thereon; for which it is alleged her said separate estate is liable; but inasmuch as she is a *féme covert* their said claim can be enforced only in a Court of Chancery; and the bill prays that the same may be declared to be a charge upon the separate estate, and that so much thereof as may be required for that pur-pose, may be subjected to the payment of complainants' claim and interest thereon.

It is not alleged in the bill that it was any part of the contract, upon which the lumber and materials were fur-nished, that the same should be a charge or lien upon the property, or that there was any such purpose or intention on the part of Mrs. Jones.

The claim, as it is made by the bill of complaint, is a simple contract debt due from Mrs. Jones to the appellants, and the only equitable ground upon which the specific lien is claimed, is that the lumber, &c. for which the debt was contracted, was used in the construction of the houses, and that thereby the separate estate was enhanced in value.

In the present state of the law in Maryland, it is very clear that this claim cannot be supported. The law has been settled by the case of *Koontz vs. Nabb*, 16 *Md.*, 549. In that case Mrs. Nabb a married woman having a separate estate, purchased a horse to be used upon the farm and gave her promissory note to secure the purchase money; the bill was filed to make her separate estate responsible for its payment; but the bill was dismissed, this Court said " we have carefully examined the decisions in England and in this country, and have reached the conclusion, that a married woman having a separate estate, cannot affect that separate estate, unless the obligation sought to be enforced presents upon its face some evidence of the intent to charge the estate, or there is evidence *aliunde* tending to prove such intent." This was there declared to be the well established doctrine in the chancery jurisprudence of England, for many years before our separation from that country, which remained undisturbed until the decision of *Hulme vs. Tenants*, 1 *Brown's Ch. Cases*, 16, in 1778.

Since that time, the doctrine has undergone much change in that country, and many modern decisions there, some of which are cited in *Koontz vs. Nabb*, and others referred to in 2 *Story's Eq. J.*, secs, 1400, 1401 (notes,) will show that the tendency of the decisions in England has been to hold that the general engagements of a married woman will bind her separate estate, without any express contract to that effect, or any expression of intention to charge the estate. Without referring to these cases more

particularly, we consider the doctrine in this State is too well settled to be changed, except by the Legislature ; that in order to charge the debts contracted by a married woman upon her separate estate, as a lien in equity, it is necessary that it should affirmatively appear her contract was made with direct reference to her separate estate, and that it was her intention to charge the same.

We refer to *Conn vs. Conn*, 1 *Md. Ch. Dec.*, 212, cited and approved by this Court in *Koontz vs. Nabb ;* see also 2 *Story's Eq. J.*, *secs.* 1398, 1401.

The bill of complaint in this case does not aver that there was any contract by Mrs. Jones to bind her separate estate, or any intention on her part to create or charge a specific lien thereon for the payment of the appellants' claim.

It states no sufficient case entitling the appellants to relief in equity, and the demurrer therefore was properly sustained.

The *Code, Art.* 51, secured to the appellants a remedy, by which they might have established a lien upon the property, but they have not chosen to pursue that remedy. The provisions of the lien law do not, in our opinion, furnish any reasons in support of this bill of complaint, the inference from the appellants' omission to claim their lien under the Code, would rather be that it was not the intention of the parties that any specific lien should be created upon the property, but that the appellants trusted entirely to the personal engagement of Mrs. Jones.

The decree of the Circuit Court will be affirmed.

*Decree affirmed.*

(Decided 8th March, 1877.)